**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DAVID ROBERT SANCHEZ and | ) | Case No. 06-40886 |
| LORI ANNE SANCHEZ, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| TENNY SHIKARO ZAHN, | ) | Case No. 06-40865 |
| | ) | |
| Debtor. | ) | |

**MEMORANDUM OPINION**

The issue presently before the Court in these two cases is whether disbursements made from the Debtors' 401(k) plans in the six months prior to filing bankruptcy should be included in the calculation of the Debtors' Current Monthly Income ("CMI"), which is used to determine the length of chapter 13 plans of reorganization under the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). The issue is of particular significance to these debtors because the minimum length of their chapter 13 plans hinges on the treatment of those disbursements – including them in CMI necessitates a five-year plan, whereas excluding them opens the door to a three-year plan. Not surprisingly, the Debtors contend that disbursements from 401(k) plans should not be included in the calculation of Current Monthly Income, and the chapter 13 trustee ("Trustee"), Richard V. Fink, maintains that they should. The Trustee filed a motion to deny confirmation in both of the above-captioned cases on this basis.

**FACTUAL BACKGROUND**

The basic outline of these cases is the same, only the dates and amounts differ.

Debtors David Robert Sanchez and Lori Anne Sanchez ("Sanchezes") filed their chapter 13 petition on April 13, 2006. The Sanchezes' form B22C indicates that their CMI is $5,439.06. This figure, which is calculated by averaging the Sanchezes' income received in the six months prior to

the bankruptcy filing, does not include $6,293.74 disbursed from Robert Sanchez's 401(k) plan within that six months. If that money is included in the calculation of the Sanchezes' CMI, as the Trustee argues it should be, the Sanchezes' annual income (CMI x 12) exceeds the median income for a family of five (the size of the Sanchez family); conversely, the Sanchezes' annual income is less than the applicable median income if the 401(k) disbursement is excluded from the calculation.

Debtor Tenny Shikaro Zahn is in a similar position. Mr. Zahn filed a chapter 13 bankruptcy on April 11, 2006. Mr. Zahn's annual income exceeds the applicable median income if $13,036.25 disbursed from Mr. Zahn's 401(k) plan within the six months prior to the bankruptcy petition is included in the calculation of his CMI; excluding it results in an annual income below the applicable median income.

## ANALYSIS

Under pre-BAPCPA practice, in the face of an objection to confirmation by a chapter 13 trustee, 11 U.S.C. § 1325(b)(1) required a debtor to devote all of his disposable income to the plan for a minimum of three years. Under BAPCPA, however, minimum plan length – now called the "applicable commitment period" – is a function of income. If a debtor's annual income is below the average median income for the applicable state and family size, his applicable commitment period is three years; if the debtor's income is above the applicable median income, then his applicable commitment period is five years.[1] BAPCPA also provides a specific method for calculating a debtor's annual income. Annual income equals a debtor's "Current Monthly Income" (CMI) times 12.[2] The composition of CMI is defined by statute (11 U.S.C. § 101(10A)), and is the focus of the Trustee's objection (motion to deny confirmation) here. Specifically, the Trustee argues that disbursements from 401(k) plans should be included in CMI. The Debtors disagree, arguing that the statute defining CMI should be interpreted to exclude disbursements from a 401(k) plan.

---

[1] 11 U.S.C. § 1325(b)(4)(A)(I) and (ii).

[2] 11 U.S.C. § 1325(b)(4)(A)(ii).

2

Thus, the resolution of the issue in these cases hinges on the definition of CMI in 11 U.S.C. § 101(10A), which provides as follows:

(10A) The term "current monthly income"--

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during   t  h  e 6-month period ending on–
>
>> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>>
>> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
>
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

Stated in the terms of the statute, the germane question for the Court's consideration is: "Do disbursements from a 401(k) plan constitute income received without regard to whether such income is taxable income, derived during the 6-month period' preceding the bankruptcy filing?" The Trustee maintains that they are, and the Court agrees.

The Court does not need to look further than the plain language of the statute to arrive at this conclusion.[3] "Income" is "a gain or recurrent benefit usually measured in money that derives from

---

[3] "[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' " *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

capital or labor."[4]  "Received" means "to come into possession of" or "acquire."[5]  And, "derived" is largely redundant of "received," meaning "to take, receive, or obtain especially from a specified source."[6]  A disbursement from a 401(k) plan fits all of these critical terms.  It is a gain, inasmuch as a person cannot use the money deposited in a 401(k) plan until it is disbursed, and a person obviously cannot use the funds until he takes possession of them.  Moreover, the Internal Revenue Service treats 401(k) disbursements as income, lending further support to the Court's conclusion that such disbursements constitute income for purposes of § 101(10A).

The Debtors' primary argument is that a 401(k) disbursement does not constitute income received in the 6-month look-back period because it was income received at the time it was earned.  This argument is plainly in error.  Earnings that are contributed to a 401(k) plan are deferred as income and are received by the employee and taxed by the government at a later date, *i.e.*, when the funds are withdrawn.  The 401(k) plan's character outside of the 6-month look-back period is not the issue before the Court, so no further discussion of that issue is required.  For purposes of this decision, it is sufficient to say that money disbursed from a 401(k) plan within the 6-month look-back period meets the statutory definition of CMI on all fours.

A court's inquiry only needs to continue beyond the language of the statute where (1) a literal application of the statutory language would be at odds with the manifest intent of the legislature; (2) a literal application of the statutory language would produce an absurd result; or (3) the statute is ambiguous.[7]

None of these exceptions applies here.

First, the Congressional record on § 101(10A) is little more than a restatement of the statute,[8] but the Court discerns a Congressional intent to interpret § 101(10A) broadly based on Congress's use of broad, inclusive language in § 101(10A), which captures income "from all sources" and

---

[4] Merriam-Webster Online Dictionary, http://www.merriamwebster.com.

[5] *Id.*

[6] *Id.*

[7] *Ron Pair*, 489 U.S. at 241.

[8] *See* H.R. Rep. No. 109-31(I), at 51 (2005).

4

"without regard to whether such income is taxable income."[9] Thus, the Court's determination that disbursements from 401(k) plans are included in CMI is consistent with the apparent intent of Congress to interpret § 101(10A) broadly.

Second, the Court's ruling here does not lead to an absurd result. Rather, it is a logical reading of the statute. Simply stated, money contributed to a 401(k) plan is neither received for use by a taxpayer nor recognized as income for tax purposes until that money is withdrawn from the 401(k) plan. The Debtor contends that inclusion of 401(k) disbursements in CMI results in the "double-counting" of the money deposited into the 401(k) account, but the Court does not believe that would be the case unless there was evidence that the money disbursed within the six-month look-back period was the same money deposited in that period, and there is no such evidence before the Court in these cases.

Finally and briefly, the Court does not find, nor do the Debtors suggest, that the statute is ambiguous.

## CONCLUSION

For the reasons stated above, the Court finds that in each of the above-captioned cases, the funds disbursed from the Debtors' 401(k) plan within the six months preceding the filing of their bankruptcy petitions should be included in the calculation of the Debtors' Current Monthly Income. The inclusion of these funds in the Debtors' Current Monthly Income raises their annual income above the applicable median income, and, in turn, triggers a five-year applicable commitment period under § 1325(b)(4). Therefore, the Trustee's motions to deny confirmation of the Debtors' chapter

---

[9] Although the statute's directive to include in the calculation of CMI all income "without regard to whether such income is taxable income" could be interpreted as permitting the exclusion from CMI of money actually taxed as income, such as 401(k) disbursements, in light of the broad reach of the statute, Congress most likely intended that phrase to require the inclusion of non-taxable income in the calculation of CMI.

13 plans will be sustained. A separate order sustaining the Trustee's motions will be entered pursuant to Fed. R. Bank. P. 9021.

ENTERED this 13th day of July 2006.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Richard V. Fink
Tracy L. Robinson